UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TENNENBAUM CAPITAL PARTNERS LLC,

        Plaintiff,

  -v-                                                    No.  07 Civ. 9695 (LTS)(DCF)

MICHAEL T. KENNEDY,

        Defendant.
-------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

Plaintiff Tennenbaum Capital Partners LLC ("Tennenbaum" or "Plaintiff") brings this breach of contract action against Defendant Michael T. Kennedy ("Kennedy" or "Defendant") alleging that Defendant has failed to pay Plaintiff $10 million owed under a guaranty agreement. Plaintiff moves the Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Defendant opposes Plaintiff's motion, arguing, inter alia, that he is entitled to discovery under Rule 56(f), and moving to compel discovery by way of a letter motion directed to Magistrate Judge Freeman.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.  The Court has considered carefully all of the parties' submissions.  For the reasons stated below, Defendant's Rule 56(f) application is denied and Plaintiff's motion for summary judgment is granted as to Defendant's liability for principal, interest and attorneys' fees.  Defendant's letter motion to compel discovery is denied as moot.

### BACKGROUND

The following material facts are undisputed.  Defendant is a citizen of Pennsylvania. (Def's 56.1 ¶ 2; Pl's 56.1 ¶ 2.)  Defendant was the CEO and majority shareholder of Radnor Holdings Corporation ("Radnor").  (Kennedy Decl. ¶ 2.)  Pursuant to a Credit Agreement dated

December 1, 2005 (the "Credit Agreement"), certain lenders (the "Lenders") loaned Radnor $95 million. The two secured loans making up the $95 million loan were referred to as Tranches A and B. (Def's 56.1 ¶ 5; Pl's 56.1 ¶ 5; Credit Agreement dated December 1, 2005 (Ex. 3 to the Hollander Decl.).) Under the Credit Agreement, Plaintiff is designated the Agent and Collateral Agent for the Lenders, with the power to act on behalf of the Lenders. (Def's 56.1 ¶ 6; Pl's 56.1 ¶ 6.) On or about April 4, 2006, the Lenders made an additional loan to Radnor in the principal amount of $23.5 million, referred to as the Tranche C Loan, pursuant to Amendment No. 1 to the Credit Agreement. (Def's 56.1 ¶ 7; Pl's 56.1 ¶ 7.) Plaintiff continued as the Agent and Collateral Agent for the Lenders under the amendment. (Hollander Decl. ¶ 6.) In connection with the Tranche C Loan, Defendant executed a Guaranty and Negative Pledge Agreement (the "Guaranty"), pursuant to which Defendant guaranteed repayment of not more than $10 million of the principal amount of the Tranche C Loan. (Def's 56.1 ¶ 8; Hollander Decl., Ex. 5.)[1]

Radnor defaulted on payment of the Tranche A, B and C Loans. (Hollander Decl. ¶ 8; Pl's 56.1 ¶ 9.) By letter dated August 17, 2009, Plaintiff demanded payment from Defendant

---

[1] Relevant provisions of the Guaranty provide that "[s]ubject to the limitations set forth in Section 11 hereof, Guarantor hereby irrevocably guarantees to each Lender and the Agent, as a primary obligor and not merely as a surety the prompt payment in full, in Dollars, when due . . . of the principal and interest on the Tranche C Loans," see Hollander Decl., Ex. 5, Section 1, that "[n]otwithstanding anything to the contrary contained in this Guaranty, (A) the liability of the Guarantor hereunder for the Guaranteed Obligations shall not exceed the principal amount of Ten Million Dollars ($10,000,000) thereof at any time outstanding, plus interest thereon from the date demand on this Guaranty is made by any Lender Party . . . and costs, expenses and other charges (including, but not limited to, reasonable attorneys' fees and legal expenses) incurred by Agent after such date of demand," id at Section 11, and that the "Guarantor acknowledges that the obligations undertaken by him under the Credit Agreement involve the guarantee of obligations of Persons other than himself and that the obligations of the Guarantor under Section 1 are absolute and unconditional," id. at Section 2.

under the Guaranty.  (Pl's 56.1 at ¶ 11; Hollander Decl., Ex. 6.)  On August 21, 2009, Radnor and certain of its affiliates (collectively "Radnor") filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware.  (Def's 56.1 ¶ 13; Pl's 56.1 ¶ 13.)  In the course of the Chapter 11 proceedings, the Bankruptcy Court determined that the Plaintiff and the Lenders had an allowed secured claim of approximately $128.8 million and that the only competent evidence of record showed that the collateral securing the claim, consisting of substantially all of Radnor's assets, was valued at more than $132 million.  (See Kennedy Decl., Ex. 1, In Re Radnor Holdings Corp., 353 B.R. 820, 846-47 (Bank. D. Del. 2006).)  The bankruptcy court authorized the holder of the allowed $128.8 million claim to credit bid "any or all" of the claim "at any sale of property of [Radnor] that is subject to a lien that secures such Allowed Claim, and [to] offset any or all of such amounts against the purchase price of such property." (Judgment in Favor of Defendant on All Counts, dated Nov. 16, 2006, in Official Committee of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Capital Partners LLC (In Re Radnor Holdings Corp.), Adv. Pro. No. 06-50909, Chap. 11 Case No. 06-10894 PJW. (Ex. 1 to Def's Br. In Opp.) ("Judgment").)

In a September 22, 2006, order, the bankruptcy court approved bidding procedures for a sale of substantially all of Radnor's assets.  (See Nov. 21, 2006, Order (1) Approving Sale of Substantially all of Debtors' Assets Free and Clear of all Liens, Claims, Interests and Encumbrances; (2) Approving Assumption and Assignment of Certain Contracts and Leases; and (3) Granting Related Relief, in In re Radnor Holdings Corp. ("Sale Order") (Ex. 7 to Hollander Decl.), at 2; see also Pl's 56.1 ¶ 15.)  Plaintiff formed TR Acquisitions Co., LLC ("TRAC"), an affiliate, to be the entity that would, if necessary, bid for and acquire the Radnor assets.  (Def's 56.1 ¶ 16; Pl's 56.1 ¶ 16.)  The court's November 21, 2006, Sale Order approving the sale of

substantially all of Radnor's assets to TRAC under an Amended and Restated Asset Purchase Agreement (the "APA") and pursuant to, inter alia, sections 105 and 363 of the Bankruptcy Code (11 USC §§ 105, 363) found that "Purchaser [TRAC] holds an allowed claim . . . in the amount of $128,835,557.26 . . . and was authorized [under the Judgment] to credit bid any or all of such Allowed Claim" at the auction.  (Sale Order at ¶ Q.)  The bankruptcy court held that the credit bid portion of TRAC's consideration for the sale was "a valid and proper offer pursuant to the Bid Procedures and Bankruptcy Code Sections 363(b) and 363(k)."  (Sale Order at ¶ Q.)  According to the APA, the "Credit Bid Amount" offered as part of the aggregate consideration for the assets, includes "$95,000,000, plus the amount of any accrued and unpaid interest payable to the lenders under Tranches A and B of the Tennenbaum Credit Agreement (the "Tennenbaum Lenders") through the Auction Date."  (Id., Ex. A, APA at 3.1(a)(ii).)  As previously noted, $95 million was the principal amount of the Tranche A and B loans.  The APA makes no reference to the $23.5 million Tranche C loan.  The bankruptcy court found that the total consideration bid by TRAC was "the highest and best offer received by Debtors" and approved the sale of Radnor's assets to TRAC "free and clear of all Liens, Claims, Interests and Encumbrances, because, with respect to each creditor asserting a Lien, Claim or Interest, one or more of the standards set forth in Bankruptcy Code §363(f)(1)-(5) has been satisfied."  (Sale Order ¶¶ R, T.)

       The Sale Order provides that it is binding on, among others, "all creditors and equityholders of any of the Debtors."  (Id. at ¶ 25; see also fn. 1 (identifying debtors).)

DISCUSSION

       Summary judgment in favor of a moving party is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(c). A fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration in original)). The opposing party's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." Contemporary Mission, Inc. v. United States Postal Service, 648 F.2d 97, 107 n. 14 (2d Cir. 1981) (quotation marks omitted); see also Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996) (holding that "mere conclusory allegations, speculation or conjecture" will not provide a sufficient basis for a non-moving party to resist summary judgment). The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Rubens v. Mason, 527 F.3d 252, 254 (2d Cir. 2008).

Rule 56(f) provides that, "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." Fed. R. Civ. P. 56(f). The party seeking discovery pursuant to Rule 56(f) must file an affidavit explaining "the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were

unsuccessful." Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994).  However, a party is not automatically entitled to discovery under 56(f); "[e]ven where a Rule 56(f) motion is properly supported, a district court may refuse to allow additional discovery if it deems the request to be based on speculation as to what potentially could be discovered." National Union Fire Insurance Company of Pittsburgh v. Stroh Companies, Inc., 265 F.3d 97, 117 (2d Cir. 2001).  Rule 56(f) is not a shield against all summary judgment motions and a "bare assertion" that evidence supporting a party's allegations lies in the hands of the opposing party is insufficient to justify denying a summary judgment motion.  Paddington, 34 F.3d at 1138.

Defendant's arguments in opposition to Plaintiff's motion for summary judgment focus principally on his asserted need for discovery in order to determine (i) Plaintiff's citizenship and the basis of this Court's subject matter jurisdiction; (ii) whether Plaintiff's claim against Radnor, if it did not credit bid the Tranche C Loan amount, has been sold to another, paid or substantially reduced; and (iii) whether Plaintiff has been made whole because the assets purchased were worth more than Plaintiff paid for them.  Defendant has, however, failed to proffer anything more than speculative assertions in support of his Rule 56(f) application and, with respect to the merits, the materiality of the information he claims he needs and, thus, has failed to demonstrate the need for further discovery prior to resolution of the merits of Plaintiff's summary judgment motion.

Jurisdiction

Plaintiff has proffered, in response to an order to show cause issued by the Court, the Declaration of Attorney Leonard Benowich, detailing the citizenship of Plaintiff.  (See Docket Entries No. 3, 5.)  Under penalty of perjury and based on personal knowledge, Benowich declares that Tennenbaum is a limited liability company organized under the laws of the state of Delaware consisting of twelve members.  (See Docket Entry No. 5, at ¶¶ 3, 5.)  Each of these members is a

citizen of the State of California and none is a citizen of the State of Pennsylvania. (Id. at ¶ 5.) Benowich and David Hollander, Plaintiff's Managing Director, have also provided declarations in support of Plaintiff's motion for summary judgment. In Hollander's Reply Declaration, under penalty of perjury and based on personal knowledge, Hollander again states that each of Plaintiff's members is a citizen of California and that none is a citizen of Pennsylvania. (See Hollander Reply Decl. ¶ 2.) Hollander also states that the identity of Plaintiff's members is proprietary and extremely confidential and is not even shared with all of the other senior employees of the Plaintiff. (Id. at ¶ 3.)[2]

        Notwithstanding Defendant's failure to proffer any factual basis for an inference of lack of subject matter jurisdiction the Court, mindful of its obligation to determine that it is acting in a matter of which it has jurisdiction, see E.R. Squibb & Sons v. Accident & Cas. Ins. Co., 160 F.3d 925, 929 (2d Cir. 1998) ("Since subject matter jurisdiction is an unwaivable sine qua non for the exercise of federal judicial power [the Court] must consider whether there is diversity jurisdiction in this action" (internal quotations and citations omitted)), has examined in camera the declarations from Benowich and Hollander proffering that all of Plaintiff's members were citizens of California as of the time this action was commenced, as well as a list of Plaintiff's members at the time the action was commenced. The Court finds that Plaintiff's proffers regarding its citizenship are sufficient to establish that the Court has diversity jurisdiction of this action. The

---

[2]     Plaintiffs' affidavits include evidence that Plaintiff offered to reveal the identities of its members to defense counsel on condition that counsel not share the information with anyone, including Defendant, and that Defendant refused to agree to the limitation. (See Hollander Reply Decl. ¶ 4; Benowich Reply Decl. ¶¶ 9-12, Ex. 9.) According to the declarations submitted for in camera inspection Plaintiff did, at Magistrate Judge Freeman's direction, provide information about the the names and addresses of each of the Plaintiff's members as of the commencement of this action, for counsel's eyes only.

materials submitted for the Court's in camera review will remain sealed based on Plaintiff's affidavits attesting to the commercial sensitivity of the entity membership information included therein.

Defendant asserts that he continues to lack information sufficient to confirm or deny Plaintiff's jurisdictional allegations, speculates that other companies allegedly controlled by Plaintiff might be alter egos of Plaintiff and that their citizenship might destroy diversity were they joined here, and complains of Plaintiff's refusal to reveal the citizenship information absent a confidentiality condition.  (See note 2.)  Defendant, however, provides no factual basis for his contention that the Court may lack subject matter jurisdiction.  In the face of Plaintiff's proffered evidence, including repeated declarations made under penalty of perjury regarding Plaintiff's citizenship, Defendant offers only speculation and bare assertion that discovery of the members' identities or those of their affiliates might reveal a lack of subject matter jurisdiction.  Defendant has not satisfied his burden under Rule 56(f) with respect to the jurisdictional issue.

Breach of Guaranty Claims

In order to succeed on a claim for breach of contract under New York law, a plaintiff must show "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."  Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994) (citation omitted).  "For a plaintiff to establish a prima facie case that it is entitled to recover on a guarantee under New York law, it must show: (1) that it is owed a debt from a third party; (2) that the defendant made a guarantee of payment of the debt; and (3) that the debt has not been paid by either the third party or the defendant."  Chemical Bank v. Haseotes, 13 F.3d 569, 573 (2d Cir. 1994); Dolphin Direct Equity Partners, LP v. Interactive Motorsports and Entertainment Corp., No. 08 Civ. 1558, 2009 WL 577916, at *4 (S.D.N.Y. Mar. 2, 2009) (same).

Defendant does not dispute that he executed and delivered a personal guaranty of the payment, up to $10 million plus interest, of the Tranche C loan. He contends, however, that he should be allowed discovery pursuant to Rule 56(f) as to whether Plaintiff's interest in the Tranche C loan has been sold to another, paid or substantially reduced. Defendant proffers no facts or allegations indicative of a likelihood that discovery would produce evidence of any such circumstances.

Plaintiff, on the other hand, proffers evidence that no part of the Tranche C indebtedness – the indebtedness forming the basis of Plaintiff's claim for Defendant's breach of the Guaranty – has been paid. In his declaration filed in support of the motion for summary judgment, Hollander states under penalty of perjury that the Tranche C debt remains entirely due, owing, and unpaid, that neither Radnor nor Kennedy nor any third party has paid any portion of the Tranche C loans and that Kennedy has not made any payments in respect of the sums due under the Guaranty. (Hollander Decl. ¶¶ 10, 25.) In his reply declaration, Hollander reiterates that no payments have been made in respect of the Tranche C debt. (Hollander Reply Decl. ¶ 6.) He further declares that Plaintiff has not assigned its interest in or to the Guaranty, that Plaintiff is still the Agent under the Guaranty, that none of the Lenders has assigned its interest to any third party for which Plaintiff is not the Agent, and that neither Plaintiff nor any of the Lenders has sold its interest in the Tranche C Loan (other than transfers to the current lenders, which are under the control of the Plaintiff), this Guaranty or the Allowed Claim in the Radnor Bankruptcy. (Id. at ¶ 8.) Hollander further proffers that neither the claim asserted in the current action, nor the Allowed Claim, has been reduced or satisfied by any payment. (Id.) Finally, Hollander declares that Plaintiff has no records that these claims "may have been sold to another, paid or substantially reduced" because the Tranche C debt has not been sold, paid or reduced in any manner whatsoever. (Id. at ¶ 10 (quoting Defendant's

Opp. Mem., at 12-13).)

In the face of such evidence, Defendant's mere assertion that Plaintiff may no longer hold the debt and that the debt may have been reduced, is insufficient to warrant the discovery that Defendant requests. Defendant proffers no good faith basis for belief that discovery would produce any information contrary to Plaintiff's declarations and the Court will not permit Defendant to engage in a fishing expedition based on mere speculation. Contemporary Mission, 648 F.2d at 107 ("Rule 56(f) cannot be relied upon to defeat a summary judgment motion 'where the result of a continuance to obtain further information would be wholly speculative.'" (citation omitted).)

Defendant also opposes the motion on legal grounds, arguing that, because the bankruptcy court found that the total value of the assets securing Plaintiff's claims under the Tranche A, B and C loans in the Radnor bankruptcy exceeded the value of those claims as of the petition date and TRAC received all of those assets in return for the credit bid in the bankruptcy sale, Plaintiff's allowed secured claim has necessarily been satisfied in full and it is not entitled to recover on the Guaranty. Defendant's argument is inconsistent with the governing bankruptcy court orders and the APA and is therefore rejected. His contention that summary judgment should be denied because he is entitled to discovery as to, inter alia, the value of the assets transferred, fails as well.

Defendant asserts conclusorily that the value of the assets received by Plaintiff in the bankruptcy court-approved transaction is relevant and the proper subject of discovery because Plaintiff was required to apply "any realization on the sale of collateral to satisfaction of both the Tranche A and C Loan." (Def's Opp. at 6; see also id. at 14 (arguing that Plaintiff has been made whole if it "recovered far more in value than the debt obligation and purchase price combined").) Defendant appears to allude to section 5.08 of the Tranche A Security Agreement which, as

TENNENBAUM.WPD        VERSION 8/14/09        10

amended in connection with the extension of the Tranche C loan, provides for the application of proceeds of "any collection, sale or other realization of all or any part of the" collateral.  (See Ex. E to Kennedy Decl.).  Defendant's reliance on this provision is, however, misplaced, because it is undisputed that Plaintiff acquired Radnor's assets not by way of realization on the collateral security for the loans but, rather, pursuant to a bankruptcy court-approved sale of those assets free and clear of all liens, including those created by the Tranche A Security Agreement, in return for consideration that included a portion of its allowed secured bankruptcy claim.

The bankruptcy court's judgment determining that Plaintiff had an allowed secured claim in the amount of $128.8 million against Radnor's estate expressly permitted Plaintiff to credit bid "any or all of such Allowed claim (plus all post-petition accrued and unpaid interest, fees and expenses) at any sale of property of [Radnor and its affiliates] that is subject to a lien that secures such Allowed Claim, and [further permitted Plaintiff to] offset any or all of such amounts against the purchase price of such property."[3]  In its Sale Order the bankruptcy court found, following an auction and Sale Hearing pursuant to court-approved bidding procedures, that the sale of assets to Plaintiff pursuant to section 363 of the Bankruptcy Code constituted "the highest and best offer for the Purchased Assets." (Sale Order at 2 and ¶¶ E, R.)   The APA expressly provided that the credit bid portion of the consideration for the assets consisted of $95 million (the principal amount of the Tranche A and B loans[4]) "plus the amount of any accrued and unpaid interest payable to the lenders under Tranches A and B of the Tennenbaum Credit Agreement . . . through the Auction Date."  Any issue as to the relationship between the value of the assets sold pursuant to the court-approved

---

[3]     Judgment at 2.

[4]     See Credit Agreement dated December 1, 2005, Ex. 3 to Hollander Decl.

APA and the amount of the credit bid is immaterial to Plaintiff's guaranty claim here because it was the court-approved credit bid, rather than the collateral value, that quantified the portion of Plaintiff's allowed secured claim that was satisfied in connection with the sale. Defendant thus has identified no genuine issue of fact as to whether the Tranche C indebtedness has been satisfied in whole or in part.

Plaintiff has met its burden with respect to its breach of guaranty claim against Defendant. Plaintiff's evidence establishes the existence of an unpaid debt arising from the Tranche C loans, the existence of the Guaranty, and that neither Defendant, Radnor, nor any other party has paid the outstanding debt. Additionally, Plaintiff has provided evidence of demand for payment under the Guaranty and has identified its damages – the $10 million dollars (plus interest and attorneys' fees) that is owed under the Guaranty. Plaintiff has made out a prima facie case for a breach of guaranty claim and Defendant has not proffered any evidence that a genuine issue of material fact exists that would warrant denial of Plaintiff's motion. Nor has Defendant proffered a sufficient basis for granting his Rule 56(f) application. Thus, the Court finds that Plaintiff is entitled to summary judgment as to Defendant's liability under the Guaranty.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted as to Defendant's liability to it under the Guaranty for $10 million principal, plus interest and attorneys' fees. Defendant's letter motion to compel discovery is denied as moot.

Plaintiff is directed to file, with a courtesy copy provided for Chambers, no later than **August 31, 2009,** an affidavit setting forth the amounts it contends are owing as interest and attorneys' fees, and identifying the basis for its calculations, together with a proposed judgment. Defendant shall file any opposition or counter-proposal, with appropriate evidentiary support and

courtesy copies provided for Chambers, by **September 8, 2009**; Plaintiff shall file and provide courtesy copies of any reply submission by **September 15, 2009**. The Clerk of Court is respectfully requested to terminate Docket Entry No. 25. The final pre-trial conference scheduled for September 11, 2009, is marked off the calendar in light of this decision.

    SO ORDERED.

Dated: New York, New York
       August 14, 2009

/s/ LAURA TAYLOR SWAIN
United States District Judge